Mata J. TYSON, Appellant,

v.

George F. DIXON, III, Respondent.

No. WD 46772.

Missouri Court of Appeals,
Western District.

June 22, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 27, 1993.

Application to Transfer Denied
Sept. 28, 1993.

Phillip L. Morris, Kansas City, for appellant.

Larry James Tyrl, Kansas City, for respondent.

Before SMART, P.J., and SHANGLER and FENNER, JJ.

SMART, Judge.

This case involves the "relation back" of an amendment substituting a party defendant under Rule 55.33(c), filed after the statute of limitations has run. Plaintiff Mata J. Tyson appeals from the trial court's order granting Defendant George F. Dixon, III's motion for summary judgment upon defendant's assertion that plaintiff's cause of action was barred by the statute of limitations.

Judgment is affirmed.

On June 25, 1985, as Mata Tyson was leaving her employer's office to go home for the evening, a light fixture fell from the hallway ceiling, striking her on the head and injuring her. She engaged attorney Phillip L. Morris, who processed a worker's compensation claim for her and also investigated a claim against the owner or operator of the office building in question. The investigation by Mr. Morris disclosed that the record owner of the office building was Mistwood, Inc. ("Mistwood"). Plaintiff's attorney also observed that there were a number of business entities located in the building associated with the name "Dixon" and learned there was a "George Dixon" in the building. On August 8, 1985, he corresponded with Mr. Dixon as follows:

Mr. George Dixon

4528 Belleview Avenue

Kansas City, Missouri 64111

Re: Ms. Mata J. Tyson
Injury at 4528 Belleview

June 25, 1985

Dear Mr. Dixon:

I am writing to you as owner of real estate commonly known as 4528 Belleview Avenue in Kansas City, Jackson County, Missouri. I represent Mata J. Tyson who was injured on your property when a building light fixture fell from the ceiling and struck her, causing her head and other injuries.

If you are covered by liability insurance, kindly forward this letter to your insurance company to notify it of my representation, and to afford the insurance company proper notification of my attorney's lien on any sums payable to my client as a result of settlement, compromise, or suit on her claim against you.

If you are not covered by liability insurance, please contact me at the above address and telephone number to avoid legal action.

Very truly yours,
Phillip L. Morris

In response to Mr. Morris' letter, he received a letter from Maryland Casualty Company requesting that Mr. Morris forward information concerning the injury so that the claim could be evaluated. The letter referred to Maryland Casualty's insured as "George F. Dixon III."

The record reflects that on May 8, 1987, Ms. Tyson's worker's compensation carrier corresponded with Maryland Casualty as to the Tyson claim, indicating the final settlement of the worker's compensation claim of Ms. Tyson, and stating the amount of the settlement. The letter also referred to Maryland's insured as "George F. Dixon III." A copy of this correspondence was mailed to Mr. Morris.

On April 16, 1990, plaintiff, through Mr. Morris, filed suit against Mistwood (the record title owner of the building as of the date of the injury) for the injuries occurring June 25, 1985. Mr. Dixon was not named as a defendant. Mistwood was served May 22, 1990. On May 22, 1990, Mr. Morris sent the following correspondence to "George F. Dixon III and Belleview Partnership":

May 22, 1990

*Certified Mail, Return Receipt Requested*

*Additional Copy Sent By Regular Mail*

George F. Dixon III and

Belleview Partnership

c/o George F. Dixon III

4528 Belleview Avenue

Kansas City, Missouri 64111

Re: Mata J. Tyson v. Mistwood, Inc.
Case No. CV90–9798,
Circuit Court of Jackson County,
Missouri at Kansas City

*Notice of Institution of Legal Action.*

Dear Mr. Dixon and Belleview Partnership:

By this letter I am notifying you that on April 16, 1990, the above referenced lawsuit was filed in the Circuit Court of Jackson County, Missouri, wherein the plaintiff, Ms. Tyson, is seeking compensation for personal injuries she suffered when a light fixture fell from the ceiling in the second floor hallway of the building at 4528 Belleview in Kansas City, Missouri, and struck Ms. Tyson on the head.

The injury occurred on June 25, 1985. In a letter dated August 8, 1985, I advised you of the injury and my representation of Ms. Tyson. In my letter of August 8, 1985 I addressed you as owner of the building, and you forwarded my client's claim to the Maryland Casualty Company. A copy of my letter of August 8, 1985 is enclosed.

You are the agent for Belleview Partnership, and records on file at the Department of Records of Jackson County, Missouri indicate that the above building was transferred by warranty deed to Belleview Partnership on December 20, 1985. The records also reveal that on June 25, 1985, Mistwood, Inc. held the deed to the property.

I have spoken with Eugene Sellers, registered agent for Mistwood, Inc. My impression is that you and/or Belleview Partnership may have had an ownership interest in, or management and control of the property on June 25, 1985. To date, I have seen no written documentation of the involvement of George F. Dixon III and/or Belleview Partnership in the ownership, management and control of the property on June 25, 1985.

Please be advised that subsequent discovery and investigation connected with the above-referenced lawsuit may result in George F. Dixon III and/or Belleview Partnership being brought in as parties by amendment of the pleadings, if the facts so warrant.

The purpose of this letter is not to threaten you, but to put you on notice of the above pending action, and thus protect the rights of my client under the Missouri Rules of Court.

Enclosed are copies of the Plaintiffs Petition for Damages, and First Amended Petition for Damages.

Very truly yours,

Phillip L. Morris

PLM/bh

Encl.

cc: Eugene Sellers, Registered Agent
Mistwood, Inc.
J. Carlene Berry, Claims
Representative
Maryland Casualty Company
Mata J. Tyson

During discovery in the action against Mistwood, George F. Dixon III was deposed. Mr. Dixon produced an unrecorded contract for deed purporting to show that he held equitable ownership of the real estate in question at the time of plaintiff Tyson's injury. He testified in his deposition that he was the equitable owner of the property at that time, and that Mistwood had conveyed equitable ownership to him under a contract for deed.

Plaintiff thereupon filed a motion for "leave to amend to change party defendant." The motion was granted July 9, 1991. The amended petition was filed July 10, 1991, and Defendant Dixon was served September 24, 1991. There is no dispute that the five-year limitations period estab-

lished by § 516.120, RSMo 1986 expired on June 25, 1990, more than one year before the amended petition was filed naming George Dixon III.

On October 31, 1991, Defendant Dixon filed a motion for summary judgment relying upon the defense that the action was barred by the statute of limitations. Plaintiff opposed the motion for summary judgment on the ground that the "relation back" provisions of Rule 55.33(c) require that the court treat the amended petition against Dixon as related back to the date of the initial petition, April 16, 1990. After consideration of the arguments of the parties, the trial court granted summary judgment to defendant Dixon. Plaintiff appeals from the order of summary judgment.

### Rule 55.33(c)

■ The thrust of plaintiff's appeal is that the trial court erred in granting summary judgment in favor of Defendant Dixon and against plaintiff in that the trial court erroneously found plaintiff's claim to be barred by § 516.120. Plaintiff argues that Rule 55.33(c) allows the amended petition to relate back to the filing date of the original petition on April 16, 1990. Generally, the trial court's grant of summary judgment will be affirmed if no genuine issue of material fact exists for resolution by the trier of fact. *American Bank of Princeton v. Stiles*, 731 S.W.2d 332, 338 (Mo.App.1987).

Rule 55.33(c) allows certain amendments to relate back to the original filing of a petition for the purpose of determining whether the statute of limitations has run. Missouri Supreme Court Rule 55.33(c) provides:

> **Relation Back of Amendments.** Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against who the claim is asserted relates back if the foregoing provision is satisfied and within the period provided by law for commencing the action against him and serving him with notice of the action, the party to be brought in by amendment: (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

■ In order for an amendment to relate back to the original filing, Rule 55.33(c) requires: (1) that the claim asserted in the amended petition arise out of the same conduct, transaction or occurrence set forth in the original pleading; (2) that the party to be substituted into the action receive notice of the action so he or she will not be prejudiced in maintaining a defense; and (3) that the party brought into the action know or have reason to know that the action would have been brought against him or her but for a mistake concerning the identity of the proper party. *Bates v. Law Firm of Dysart, Taylor, Penner, Lay & Lewandowski*, 844 S.W.2d 1, 3–4 (Mo.App. 1992). Our inquiry focuses on whether plaintiff was mistaken concerning the identity of defendant.

### Mistake of Identity

■ Historically, the provisions allowing relation back have been applied to cases involving the correction of a misnomer. *Hoey v. St. Luke's Episcopal Presbyterian Hosp.*, 713 S.W.2d 636, 638 (Mo.App.1986). Although Rule 55.33(c) may not exclusively apply to corrections of misnomers, the rule does require the complaining party to prove that the reason for amendment is due to a mistake concerning the identity of the proper party. *Bates*, 844 S.W.2d at 3.

In the *Bates* case, James and Swann Bates, condominium developers, brought a malicious prosecution action against a group of condominium owners who had earlier sued them. They contended the condominium owners' suit had been wrongfully brought, and that they were entitled to recover damages as a result. After the

statute of limitations had run, based on new information gained in discovery, the plaintiffs sought to bring into the lawsuit the attorneys who had represented the condominium owners in the allegedly tortiously filed action. Mr. and Mrs. Bates argued that they were mistaken as to the identity of the proper party defendants until after the running of the statute because they initially assumed the condominium owners, and not the attorneys, were at fault for the allegedly malicious and false allegations made in the earlier suit. They had assumed that the attorneys were innocent of any malice or recklessness, and that the attorneys had simply relied on their clients' statements. *Id.* at 4. This court rejected the Bates' argument that Rule 55.33(c) allowed "relation back," pointing out that Mr. and Mrs. Bates knew that the Dysart firm had represented the condominium owners in the original action and knew that the firm could have potential liability for the allegedly tortious conduct. Plaintiffs' awareness of the potential liability of the attorneys was shown by the fact that the plaintiffs had attempted separate negotiations with the Dysart firm of the potential liability of the law firm. These negotiations, which were unsuccessful, were conducted before the expiration of the statute of limitations. The plaintiffs then, perhaps uncertain about the strength of their claim against the law firm, allowed the statute to run without suing the Dysart firm. After the statute of limitations had run, and after some additional discovery, Mr. and Mrs. Bates then attempted to bring in the law firm under Rule 55.33(c), claiming that they had been "mistaken as to the identity" of the proper defendant. This court held that the firm could not be brought into the suit because Mr. and Mrs. Bates knew the identity of the law firm as potential defendants and were aware of the firm's potential liability prior to the running of the statute of limitations. *Id.*

Here, plaintiff contends that at the inception of her lawsuit she was unsure whether Defendant Dixon had an ownership interest in the commercial building. Plaintiff interpreted Rule 55.33(c) as giving her the option of suing a party beyond the statute of limitations as long as that party was on notice, prior to the running of the statute, that suit might later be brought against that party. Although plaintiff sincerely and conscientiously attempted to protect her rights under Rule 55.33(c), plaintiff's understanding of the purpose of Rule 55.33(c) was incorrect. The amendment of the petition does not relate back to the date of the original filing in a case where the plaintiff had notice before the running of the statute that the party in question was a potential defendant. Just as in *Bates*, it is clear from the evidence in this case that plaintiff knew the identity of Defendant Dixon and also clearly knew that defendant might have potential liability. This is illustrated by the content of both letters sent to defendant by plaintiff. In the first letter, plaintiff referred to defendant as "owner" of the office building, revealing that plaintiff had notice that Mr. Dixon may be an owner of the property. In the second letter, Mr. Morris again indicated that he was aware that defendant might have liability for Ms. Tyson's claim. In fact, the very purpose of this letter was to protect plaintiff's claim in the event defendant's potential liability was confirmed. Neither Dixon nor Maryland Casualty ever denied that Dixon would be a proper party defendant. Maryland Casualty referred to its insured as "George F. Dixon III." In spite of the fact that plaintiff did not correspond further with Maryland Casualty, that company stayed in touch with plaintiff's worker's compensation carrier. All of this was known to plaintiff. And all of this notice was provided prior to the expiration of the statute.

Unfortunately, plaintiff believed it would be inappropriate to sue anyone other than the record title holder, even though the facts strongly suggested that George F. Dixon III had, at the least, management responsibilities with regard to the building. Plaintiff clearly would have violated no right of Mr. Dixon by naming Mr. Dixon earlier, even if subsequent discovery revealed Dixon was not a proper defendant. *Sanders v. Daniel Int'l Corp.*, 682 S.W.2d 803 (Mo. banc 1984). Probable cause and

sound logic here dictated that Mr. Dixon be named a defendant as soon as reasonably possible, and within the limitations period.

Plaintiff argues that this court's decision in *Jones v. Western Missouri Mental Health Center*, 840 S.W.2d 278 (Mo.App. 1992), is dispositive of the present issue. *Jones*, however, is distinguishable on its facts. *Jones* involved an action instigated by an employee against the Missouri Personnel Advisory Board based upon his demotion by his employer, the Western District Mental Health Center ("WDMHC"). After filing suit against the Missouri Personnel Advisory Board, plaintiff realized that WDMHC, his employer, was the proper party defendant and plaintiff was granted leave to amend his petition. Subsequently, the trial court granted WDMHC's motion to dismiss on grounds that the statute of limitations had expired. This court reversed the trial court, holding the amendment related back under Rule 55.33(c).

The significant difference between *Jones* and the instant case is that in this case plaintiff knew of the potential liability of Defendant Dixon, yet chose to wait until after the statute of limitations had run, when she became certain that he owned the property, to amend her petition. Yet liability for maintenance of property is not based only on record ownership. Often, liability will be based upon a breach of duty by the equitable owner or the manager of the property. In *Jones*, the plaintiff was confused as to whether his employer, or the Personnel Advisory Board, was the proper nominal party defendant. Plaintiff Jones mistakenly assumed that by denominating the PAB as the defendant, he had correctly pleaded his claim against his employer in the litigation. Jones was not waiting for additional confirmation of the fault of a potential defendant, as Plaintiff Tyson and Plaintiff Bates were. The *Jones* case does not extend the protection of Rule 55.33(c) to the circumstances of this case, and *Bates* forecloses such extension of the rule.

■ Plaintiff contends, in essence, that the rule allows one to be extremely conservative about suing potential defendants.

Certainly, conservatism in litigation is laudable, but not undue conservatism, especially when such conservatism has continued so long that it runs afoul of the public policy interest expressed in the statute of limitations. Rule 55.33(c) was not designed to afford protection to a plaintiff who had notice of the *identity* and *potential liability* of the proper party defendant before the statute of limitations expired, yet failed to timely bring the party into the action. The amendment attempting to add Defendant Dixon to the suit was not a correction of a "mistake" as to the identity of the proper party defendant as contemplated by Rule 55.33(c). Since such mistake is one of the essential requirements of Rule 55.33(c), it is not necessary to address plaintiff's points regarding whether defendant would be prejudiced in maintaining his defense, or whether defendant knew or should have known that but for the mistake the action would have been brought against him. Plaintiff's Points I, II and III are denied.

### Excusable Neglect

■ Next, plaintiff contends that her action of commencing suit against Mistwood rather than against Dixon was due to excusable neglect on her part. Plaintiff argues that the law may recognize either the party holding legal title by recorded warranty deed, or the party holding equitable interest by unrecorded contract for deed, as owner of property, depending on which owner has the right to control the premises.

In her fourth point, plaintiff discusses in depth the differences and similarities of equitable title and legal title in the law of real estate. She concludes that she filed suit against the wrong party defendant due to excusable neglect. However, plaintiff fails to direct this court to any authority supporting her claim that excusable neglect may toll the statute of limitations. Point IV is denied.

### Identity of Interests

■ Plaintiff also contends that there was sufficient identity of interests between Mistwood and Dixon to support relation

back of the amendment. Plaintiff suggests that Mistwood and Dixon are related parties in that Mistwood held title to the real estate in trust for Dixon as equitable owner and that these parties had a continuing and intimate business relationship evidenced by their contract for deed and the subsequent transfers of legal title of the real estate by Mistwood.

The identity of interests analysis is generally relevant to show whether two parties are so closely related that notice to one imputes notice to the other. This principle is often applicable where the parties are "a parent corporation and its wholly owned subsidiary, two related corporations whose officers, directors, or shareholders are substantially identical and who have similar names or share office space, past and present forms of the same enterprise, or co-executors of an estate." *Norton v. International Harvester Co.,* 627 F.2d 18, 21 (7th Cir.1980).

There are several reasons why the identity of interests principle is not appropriate to our present analysis. First, neither party challenges the fact that defendant received notice of the pending action against Mistwood. Thus, the question of imputed notice is irrelevant here. Second, even if notice were an issue, the evidence does not establish that these two parties were so closely related to fit within this principle. The "identity of interests" principle is generally applied when two entities are involved whose identities are difficult to separate. This principle is not applicable to the present situation. Nothing in the record indicates that George F. Dixon, III, an individual, and Mistwood, a corporation, were so closely associated or factually intertwined to present an identity of interests problem. Once again, we hold that the trial court did not err in granting Defendant Dixon summary judgment. Point V is denied.

Judgment is affirmed.

All concur.