# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1233

_____

| | | |
|---|---|---|
| Douglas R. Colkitt, M.D., | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the Eastern |
| v. | * | District of Missouri |
| | * | |
| Paul A. Boghosian; Barron Holding | * | [UNPUBLISHED] |
| Corporation, LLC, | * | |
| | * | |
| | * | |
| Appellants. | * | |

_____

Submitted:  November 15, 2000

Filed: June 6, 2001

_____

Before WOLLMAN, Chief Judge, McMILLIAN, and BYE, Circuit Judges.

_____

PER CURIAM.

In May 1996, the plaintiff-appellee, Douglas R. Colkitt, entered into a loan agreement with Keystone Financial, Inc.  Under the agreement, Colkitt would pledge his shares in two companies, EquiMed and National Medical Financial Services, as security for a $15,000,000 line of credit that was to be furnished by Keystone for Colkitt's use.

In accordance with their agreement, Colkitt pledged approximately $14,000,000 worth of shares to Keystone. Unfortunately, Keystone failed to fully fund the promised loans in return. Despite repeated inquiries by Colkitt, Keystone left unfunded over $1,450,000 in loans promised to Colkitt.

Colkitt endeavored to recover his pledged shares. Pursuant to a provision in the agreement, Colkitt tendered back those loan proceeds he had received in exchange for the return of his pledged shares. However, in the interim, Keystone had transferred the shares to other parties, including the defendant-appellants, Barron Holding Corporation, L.L.C. and Barron's president Paul A. Boghosian. Despite obtaining a consent order and arbitration award against Keystone, 650,000 shares of EquiMed and 550,000 shares of National Medical were never returned to Colkitt.

Colkitt filed a civil action under Missouri law against Boghosian and Barron. Colkitt alleged they were the wrongful beneficiaries of the pledged shares. Following a complex series of transactions, which Colkitt described as a financial scheme, Barron and Boghosian obtained access to over $3.1 million derived from the sale of the EquiMed and National Medical shares. Barron and Boghosian denied wrongdoing.

The district court[1] granted partial grant of summary judgment in favor of the defendants, and the remaining claims were tried to a jury. The jury found for the defendants on the conversion claim, but found for Colkitt on the unjust enrichment claims in the amount of $115,000 against Boghosian and $3.1 million against Barron.

On appeal, the appellants argue that the evidence was insufficient to support the jury's verdict on the unjust enrichment claims, that the jury's verdict was legally

---

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

inconsistent, and that the jury instructions were improper. We disagree, and therefore affirm.

We will not reverse a jury's verdict on a sufficiency of the evidence challenge unless "after viewing the evidence in the light most favorable to the verdict, we conclude that no reasonable juror could have returned a verdict for the non-moving party." Ryther v. KARE 11, 108 F.3d 832, 835 (8th Cir. 1997) (en banc). The Appellants have mostly reargued their version of the evidence presented at trial. They also describe the jury's verdict in an unflattering light.

But we must accept the version of the facts most favorable to the verdict. See id. From that perspective, the jury had more than enough evidence to find: (1) there was a benefit conferred upon the defendants by the plaintiff; (2) an appreciation by the defendants of the fact of such benefit; and (3) acceptance and retention by the defendants of that benefit under the circumstances in which retention without payment would be inequitable. The Webcon Group, Inc. v. S.M. Properties, L.P., 1 S.W.3d 538, 542 (Mo. Ct. App. 1999). At a minimum, the Appellants had a difficult time explaining how they received over $3.1 million in proceeds from Colkitt's pledged shares for which they paid nothing. And despite Boghosian's self-serving testimony, there was sufficient evidence to show "actual or constructive knowledge of the actionable wrong and participa[tion] therein" by Boghosian. Boyd v. Wimes, 664 S.W.2d 596, 598 (Mo. Ct. App. 1984).

Appellants' argument that the jury's verdict was inconsistent is similarly unpersuasive. In considering such an argument, it is our "duty to harmonize inconsistent verdicts, viewing the case in any reasonable way that makes the verdict consistent." Anheuser-Busch, Inc. v. John Labatt Ltd., 89 F.3d 1339, 1347 (8th Cir. 1996). It was not inconsistent for the jury to find for the defendants on the conversion claims and for Colkitt on the unjust enrichment claims because, as articulated in the jury instructions, these claims have different elements. See id. In addition, while

Appellants seek to manipulate the amounts of the judgments so as to show a seeming inconsistency, the judgments are equally susceptible to an interpretation that shows a consistent verdict.  See id.

We have also reviewed the Appellants' complaints about the jury instructions; we find them to be without merit.  The jury instructions, read as a whole and viewed against the evidence and Missouri law, "fairly and adequately submitted the issues in the case to the jury."  Gray v. Bicknell, 86 F.3d 1472, 1485 (8th Cir. 1996).  In addition, the district court acted within its discretion in refusing to issue the Appellants' proposed instruction on waiver and estoppel because the instruction was neither legally correct nor supported by the evidence.  May v. Ark. Forestry Comm., 993 F.2d 632, 637 (8th Cir. 1993).

Accordingly, we affirm the judgment of the district court in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-4-